1   Nathan W. Kellum
    TN BAR #13482; MS BAR # 8813
2   nkellum@crelaw.org
    Mark A. Mangini, TN BAR #33422
3   mmangini@crelaw.org
    Center for Religious Expression
4   699 Oakleaf Office Lane, Suite 107
    Memphis, TN  38117
5   (901) 684-5485 – telephone
    (901) 684-5499 – facsimile
6
    Bert E. Moll, SBN 15200
7   bert@mollazlaw.com
    Robert Lundberg
8   robert.lundberg@mollazlaw.com
    Bert E. Moll, P.C.
9   PO Box 999
    Chandler, AZ 85244
10  (480) 302-5155 – telephone
    (480) 857-7490 – facsimile
11  *Local Counsel*

12  *Attorneys for Plaintiff Sherry Pierce*

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

14

| | |
|---|---|
| 15   Sherry Pierce, | Case No. |
| 16        Plaintiff, | Judge |
| 17   vs. | |
| 18 | |
| 19   City of Tempe, Arizona; and David Claridge, police officer with City of Tempe Police Department, | **VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF AND NOMINAL DAMAGES** |
| 20        Defendants. | |
| 21 | |

22

1

1.   Plaintiff Sherry Pierce (Pierce) brings this civil rights action under 42 U.S.C. §§ 1983 and 1988, challenging municipal policy and practice of invoking, applying, and enforcing Arizona Revised Statute (ARS) § 13-2904, entitled "disorderly conduct," to silence Pierce's amplified speech in traditional public fora due to subjective complaints about it.

2.   In this cause, Pierce seeks injunctive relief, declaratory relief, and nominal damages against Defendants City of Tempe, Arizona and David Claridge, police officer with City of Tempe Police Department.

3.   This action is derived from rights set out in the First and Fourteenth Amendments to the United States Constitution relating to free speech and due process

4.   Defendants' policy and practice of invoking, applying, and enforcing ARS § 13-2904, have deprived, and will continue to deprive, Pierce of her fundamental constitutional rights.

5.   Every act of each Defendant, as alleged herein, was committed under the color of state law and authority.

**JURISDICTION AND VENUE**

6.   This action raises federal questions under the United States Constitution and operation of federal law, 42 U.S.C. § 1983.

7.   Jurisdiction over this action is proper pursuant to 28 U.S.C. §§ 1331 and 1343.

2

8.      This Court has authority to grant the requested injunctive relief and nominal damages under 28 U.S.C. § 1343, the requested declaratory relief under 28 U.S.C. §§ 2201-02, and the requested costs and attorney fees under 42 U.S.C. § 1988.

9.      Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b), because all claims arise in this district and all Defendants reside in the district.

## PARTIES

10.     Plaintiff Pierce is a resident of Sun Lakes, Arizona.

11.     Defendant City of Tempe ("Tempe") is a municipal governmental authority and a subdivision of the State of Arizona.

12.     Defendant David Claridge ("Officer Claridge") is a police officer with City of Tempe Police Department.  He is responsible for enforcing local and state laws, as well as policies of the City of Tempe and its police department.

## STATEMENT OF FACTS

### Pierce's Desired Speech about Abortion

13.     Pierce is an evangelical Christian who strives to adhere to biblical teaching and believes every living person is made in the image of God, including fetuses.  She believes abortion is an unjust and immoral destruction of an innocent human life.

14.     Aside from the impact on pre-born babies, Pierce is also bothered by abortion's adverse effects on pregnant women and their families.  Pierce is convinced that an abortion can lead to physical, emotional, and spiritual harm to women.

3

15.     Due to her firm convictions and concerns about abortion, Pierce feels obliged to publicly share her beliefs on the subject, especially, to women who are considering having an abortion, along with their friends and family.

16.     Pierce especially wants to warn women of the dangers of abortion that they might not be aware.  She also wants to share with them viable alternatives to abortion for consideration.  Pierce hands out information about local reputable physicians and facilities who are willing to provide free healthcare for them all the way through pregnancy and delivery.  If the mother is willing to keep the baby, Pierce offers to raise funds to help pay expected living expenses and provide free baby clothes, diapers, and other necessary items. If the mother is willing to put her baby up for adoption, Pierce offers to collaborate with an adoption agency and coordinate with local families who are willing to adopt unwanted babies.

17.     To get her message across to her target audience, that being, women who are pregnant and contemplating an abortion and their families, Pierce goes to public sidewalks and ways near abortion clinics and shares her views and willingness to help.  These locations offer Pierce a unique opportunity to reach women at their critical decision-making moments, which, in Pierce's view, is truly a matter of life or death.

18.     Realizing abortion is a sensitive topic for many, Pierce strives to convey her message in a conversational and non-threatening way.

19.     Pierce does not want to yell her information to others, believing it would detract from her purpose.  She wants to convey her thoughts in a calm, winsome manner, showing her sincere concern for the well-being of the mother as well as the baby.

4

20.     Sharing her message in this manner outside of abortions clinics, Pierce has formed numerous meaningful relationships with pregnant women lasting much longer than their pregnancies, participating in major live events with women she has counseled over the years, like weddings and children's birthday parties.

21.     Pierce does not harass or demean anyone with whom she speaks in public places outside of abortion clinics.  She does not conduct nor condone violence.  Pierce only wants to help people.

22.     When engaging in this form of expression, Pierce is typically joined by a few friends who likewise seek to help people contemplating abortion.

23.     Pierce has peacefully shared her views in this way since November of 2012.

24.     Pierce particularly wants to share her message about abortion and abortion alternatives on public sidewalks abounding East Baseline Road near the New Tempe Planned Parenthood Regional Health Center ("Planned Parenthood"), an abortion clinic located in Tempe, Arizona.

**Planned Parenthood's Configuration in Strip Mall and Public Sidewalk**

25.     The Planned Parenthood clinic first opened its doors at the East Baseline Road location on July 1, 2017, moving from its previous spot on Apache Boulevard in Tempe.

26.     The clinic is located in a strip mall south of East Baseline Road, at 1837 Baseline Road.  The strip mall also contains a gaming lounge, an automobile parts shop, and a massage spa, among a few other businesses.

5

27.     The strip mall that Planned Parenthood is in is bordered on all sides by a parking lot.  A structure housing La Fonda Mexican Restaurant and a building with two suites, housing Baseline Sports Pub and Mandarin House Restaurant, are also located in this same parking lot.

28.     The east, south, and west borders of the parking lot where Planned Parenthood sits have brick walls standing approximately 5 feet tall, physically separating it from adjoining properties.  Two driveway entrances connect the north end of the parking lot to East Baseline Road and serve as the only points of access to any of the businesses found therein, including Planned Parenthood.

29.     A public city sidewalk sits between East Baseline Road and the parking lot and is adjacent to these two driveways.  Unless walking, any individual visiting Planned Parenthood must use one of these two driveways, and, typically, the more western driveway, because it offers a straighter path to the parking lot section directly in front of the clinic.

30.     The portion of East Baseline Road adjacent to the Planned Parenthood parking lot is a seven-lane highway that facilitates significant vehicular traffic and ambient noise.

31.     Pierce usually stands on the public sidewalk on the south side of Baseline Road, just west of the west driveway entrance into the parking lot, to convey her message. Pierce does not enter the parking lot because it is private property.  The Planned Parenthood clinic is approximately 300 feet away and the sidewalk is the closest location she can stand

and communicate with people visiting the clinic.  From this spot, she directs her voice due south as people walk away from or to their vehicles.

32.    Pierce has a brief amount of time during which she can reach her targeted audience, after they exit their vehicles until they enter Planned Parenthood or exit Planned Parenthood and walk back to their vehicles.

33.    For these critical moments, Pierce must convey a message that will capture someone's attention in a winsome manner.  Due to the ambient noise coming from traffic on East Baseline Road behind her, Pierce cannot be heard if she speaks softly with only her natural voice.  And yet, she knows people are prone to ignore her and reject her message if they perceive she is yelling at them.

34.    To resolve this dilemma, Pierce likes to use an amplifier set at a low volume or a cheer cone to aid her speech.  These devices give her the opportunity to share an attention-grabbing message about the consequences of abortion in a loving, conversational tone that can be heard and received by her intended audience.

35.    In using an amplifier or cheer cone, Pierce is aware of and abides by Tempe Ordinance § 20-6, the ordinance establishing decibel limits on noise in certain areas at various times of day.

36.    Pierce can speak at the decibel level Ordinance § 20-6 requires for the sidewalk where she speaks and still be heard by her intended audience.  She has confirmed this through testing by a decibel measuring device.

37.    When heard, Pierce's urgent and heartfelt message often compels women to come to the sidewalk where Pierce is standing and converse with her, giving Pierce a

chance to elaborate on her thoughts and offer help with physical, financial, emotional, and spiritual needs.  Even without further conversation, Pierce's brief message has frequently persuaded women to not go forward with an abortion – a decision they have later thanked Pierce for.

38.     Speaking in this way, Pierce hopes her audience will receive her message in the way she intends, ponder the consequences and ramifications of abortion, and be willing to consider alternatives to the abortion procedure.

**Tempe Resistance to Amplified Speech on Public Sidewalk**

39.     Four days after the Planned Parenthood clinic opened, on July 5, 2017, several of Pierce's friends, including Steven Brown, visited the public sidewalk outside the clinic to share their beliefs about abortion.  Brown had brought his amplifier and began using it to share his life-affirming message.

40.     After sharing his views for a short while without issue, Officers Smith and Kurzaya of the Tempe Police Department approached the group and declared that they could no longer use an amplifier.  Brown was troubled by the ban on amplification, observing that he had used an amplifier in Tempe for years.  Brown asked the officers to call a supervisor to come out to straighten out the situation, and the officers obliged.

41.     Shortly thereafter, Sergeant Lenzen of the Tempe Police Department arrived, and beckoned the group to gather around her to hear her comments.  Referencing a yellow card she was carrying with her, Sgt. Lenzen acknowledged that the group had conducted this type of expressive activity in front of Planned Parenthood in the past, but noted the location was new and remarked how things would be different there, abruptly stating: "So,

today we're going to give you a disorderly conduct warning."  She also mentioned a concern about trespass should anyone in Brown's group enter into a private parking lot.

42.    Sgt. Lenzen explained the significance of the disorderly conduct warning she issued, declaring: "And this is very important for everybody to hear this.  We really don't want to take anybody from this group to jail."

43.    Brown asked what they had done wrong to prompt this warning, and Sgt. Lenzen cautioned him to listen, and answered, "Disorderly conduct is any act or utterance that would disturb someone's peace."

44.    Emphasizing they were now in a different location, off of Baseline Road, Sgt. Lenzen elaborated that the warning was premised on complaints received about their speech, pointing to surrounding businesses.  Brown asked about the need for warning, but the sergeant reprimanded Brown again, telling him he was not listening, adding that she was trying to keep the group out of jail.

45.    Sgt. Lenzen reminded the group that they could not park in a private parking lot and walk over, or they'd commit trespass, and that disorderly conduct is "any act or utterance that would disturb someone's peace", advising the group that they could be arrested if the police are required to come back.

46.    Continuing the conversation, asking if everyone was on the "same sheet", Sgt. Lenzen reiterated that they had received a warning for disorderly conduct and the warning will be written in a report, for disturbing the peace, and if there's a violation, "somebody will be given a ticket or going to jail, okay?"

47.     Brown pointed out that they were not doing anything disorderly, just proclaiming their views, and it shouldn't matter if someone disagrees with their statements because the Constitution does not allow for heckler's veto.

48.     But Sgt. Lenzen indicated a complaint was enough following a requisite warning, replying to Brown, "Yes, well, that's why you're not going to jail today…You're getting your actual official warning today from Sergeant Liz Lenzen, Tempe PD.  Okay?" The sergeant stressed that she was warning them and they could be subject to arrest if someone calls them, saying the speech is disturbing their peace.

49.     Perplexed, Brown asked what they were doing that was disorderly.  Instead of answering, Sgt. Lenzen advised they could have their attorney look up the meaning of disorderly conduct.  Brown reiterated that he doesn't know what they were doing that was disorderly.

50.     Sgt. Lenzen added that they could stay where they are as long no one claims their peace is disturbed, implying that they abandon amplification, saying: "My suggestion to you, maybe not use the blow horn.  We get calls when you guys use the blowhorn."

51.     Brown recalled that another officer told him not to use amplification, but Sgt. Lenzen indicated that the restriction was broader: "If you use the amplification, and even your voice is amplification.  You got a good voice, and it disturbs someone's peace, you can be subjected to a violation of that law.  And, as you well know, we have a wonderful court system, and it's got to go through the court system, and what we would do is either arrest, cite, or file a long-form complaint, and it goes through the court system, right? We've been to the rodeo before, yep?"

10

52.     Following some discussion about the trespass concerns, ability to obtain police reports, and whether the group was affiliated with a particular church, one of Brown's companions, Zach Conover, recalling that Tempe Ordinance § 20-6 requires a decibel level reading, inquired what objective standard would be used for assessing disturbing of the peace.  Sgt. Lenzen told him to look up the law for himself.

53.     Conover then asked Sgt. Lenzen if she could confirm that the law required measuring of decibel level to find a violation. But the sergeant refuted the notion that any objective assessment of volume was needed, explaining, "No, not for disorderly conduct. That is for, like, a noise ordinance."

54.     Following a short discussion about the group's safety, and trespassing on private property, Sgt. Lenzen and the other police left.

55.     Brown subsequently apprised Pierce of this interaction and passed along the warning he received from Sgt. Lenzen to her.  Pierce was very concerned about the police restricting their speech at the new Planned Parenthood location because people who opposed their message could easily complain their peace was disturbed by the speech.  But she was unwilling to forgo her freedom to speak and be heard and was determined to use amplification – at a volume consistent with § 20-6 decibel limits – during her future visits.

56.     Pierce's first opportunity to personally share her message at this location came one week later, on July 12, 2017.  She came that day and regularly shared her message there through amplification almost every Wednesday thereafter.

57.     While Pierce and her friends shared their message in this location, individuals affiliated with Planned Parenthood and others frequently voiced their

11

opposition to the viewpoints conveyed by Pierce and her friends, taking issue with their beliefs about abortion, and threatened to call the police to shut them down.

58.     On a number of these occasions, the police came out and warned Pierce and her friends that Planned Parenthood, and sometimes other nearby businesses, complained about their speech, making them subject to criminal citation or arrest for disorderly conduct.  The threats were concerning, but Pierce hoped they would not come to fruition.

59.     But, subsequently, on December 2, 2017, Pierce learned Brown was issued a criminal citation for disorderly conduct under ARS § 13-2904 for using his amplifier on the public sidewalks near Planned Parenthood.  For reason, the police officers again indicated that the issue was someone complained about Brown's speech, making it a violation.  The officers further explained that they must take action when a complainant decides to be a victim.

60.     Pierce was distressed by the news of this incident due to her continued desire to use amplification to share her beliefs, and knew that some nearby businesses, especially Planned Parenthood, took issue with her message.  She was concerned that she too could receive a citation if someone complained about her speech.  Nonetheless, she hoped the citation to Brown was an isolated incident.

**Pierce is Issued Official Warning to Not Use Amplification**

61.     Pierce returned to the sidewalks near the Tempe Planned Parenthood to share her message on December 13, 2017.  She intended to use an amplifier set a low volume on this day.

62.     Pierce arrived around 7:00 a.m., and began passing out literature and conversing with passersby, while she waited for her friends to arrive with the amplifier she could use.

63.     Within the next two hours, her friends Zachary Conover and Jeff Durbin arrived with an amplifier.  Durbin took the first turn speaking about abortion over the amplifier, and Pierce planned to use it to share her message later.  In the meantime, she continued with literature distribution and conversations.

64.     About 30 minutes into Durbin's message, Officer Claridge with the Tempe Police Department approached Durbin and asked Durbin to produce his identification, explaining the police had received a complaint about Durbin's amplified speech.  Pierce observed Durbin's interaction with police.

65.     Durbin pointed out that amplified speech is a legal activity, but Officer Claridge said he was talking about disturbing the peace.

66.     Presuming Officer Claridge was investigating his noise level, Durbin produced a copy of Ordinance § 20-6, showing that it allows him to speak a certain decibel level without committing a violation.  Officer Claridge indicated that he was aware of the ordinance, but informed that he was not dealing with that law or decibels, he was concerned about a complaint.

67.     Durbin objected to the process, observing that his constitutional rights could not be restricted due to subjective complaints.  In response, Officer Claridge said Durbin should discuss the matter with his supervisor, who was on the way to the scene.  Officer

13

Claridge then walked a short distance away and soon returned with his supervisor, Sgt. Lenzen.

68.     Sgt. Lenzen asked who was using the amplifier and Durbin acknowledged his use of it. The sergeant then explained that a complaint was the basis for banning amplification and she was giving Durbin a warning.

69.     Durbin questioned the basis for the warning, contending that his amplification is appropriate unless louder than decibel levels established in Tempe Ordinance § 20-6.  But Sgt. Lenzen disagreed with his conclusion, promising police enforcement for disorderly conduct due to a complaint from a citizen.

70.     Durbin stressed that his speech was legal since he was not in violation of § 20-6, but Sgt. Lenzen warned Durbin to put away the amplifier to avoid arrest.

71.     Durbin asked Sgt. Lenzen to reconsider, reminding that amplified speech is a lawful activity, but, Sgt. Lenzen reiterated that a criminal violation is based on receipt of complaint.  The sergeant left the scene, and Officer Claridge walked a short distance away.

72.     After receiving this warning, Durbin stopped using amplification.  But Marcus Pittman, another member of the group, began using the amplifier to share his beliefs.

73.     Consequently, Officer Claridge returned.  The police officer acknowledged that he had not specifically warned Pittman previously, but informed that he would go around and issue each individual in the group a warning and write a police report for the city attorney.  The city attorney would decide whether to bring charges against them.

74.     Durbin tried again to reason with Officer Claridge, reminding of the need to test for maximum decibel levels as set out in Tempe Ordinance § 20-6, but Officer Claridge confirmed that he was not relying on § 20-6, but the disorderly conduct law.

75.     Durbin asked Officer Claridge if he would like to see the law requiring testing of decibels.  The officer declined and informed that the application of the disorderly conduct law was not his own, but the City's, advising that he had just spent several minutes with city attorney about the process and law they would follow.

76.     The police officer then proceeded to address each individual present, starting with Pittman, warning each person not to use an amplifier.

77.     Durbin reiterated that he would show Officer Claridge the decibel requirement in the city code, but the officer ignored him, as he continued to address other individuals on the sidewalk and warn them about amplification.

78.     After warning several individuals, Officer Claridge walked up to Pierce, introduced himself, and asked Pierce to identify herself.  Perplexed, Pierce asked if she had broken any laws, to which, Officer Claridge responded that was not presently aware of a violation but assured her that amplification would break the law.

79.     Pierce objected to the suppression of her speech, but Officer Claridge was not swayed.  He moved on to an individual standing next to Pierce, and issued the same warning, elaborating that anyone using amplification would be prosecuted.

80.     After confirming with Durbin that everyone present had been warned, Officer Claridge left.

15

1    81.    Fearful of being criminally cited or arrested, Pierce has refrained from

2    speaking with an amplifier since she was warned.

3    **Tempe Confirms Ban on Expression Based on Subjective Complaints**

4    82.    As a result of the warning and ban, Pierce is precluded from speaking in her

5    desired tone to people in the Planned Parenthood parking lot and is subject to citation or

6    arrest for using amplification whenever someone complains about it, even if her noise level

7    is in compliance with Ordinance § 20-6.

8    83.    After giving this dilemma some thought, Pierce decided she could switch

9    from an electronic amplifier to a plastic cheer cone to avoid difficulty.  Since a cheer cone

10   does not amplify speech, it just directs it, Pierce believed she could use a cheer cone as

11   long as she stayed in the appropriate decibel level range set out in Ordinance § 20-6.

12   84.    With this compromise in mind, on January 10, 2018, Pierce sent an email to

13   the general email address of the Tempe Police Department, advising of the warning she

14   had received from Tempe police officer, and asked whether she could use a plastic cheer

15   cone without subjecting herself to citation or arrest.

16   85.    Two days later, on January 12, 2018, Detective Nathan Ryberg of the Tempe

17   Police Department replied to Pierce's inquiry via email on behalf of Tempe and the Tempe

18   Police Department, denying her the relief she was seeking.

19   86.    In this email, Detective Ryberg advised that the issue "isn't the fact that the

20   device is powered or not, but just the use of it may disturb some other citizen."

21   87.    Detective Ryberg cited and quoted ARS § 13-2904(A)2, emphasizing certain

22   terms as follows:

16

1
2

*A person commits disorderly conduct if, with **intent** to disturb the peace or quiet of a neighborhood, family or person, or with **knowledge** of doing so, such person:   **Makes unreasonable noise…..***

3   (emphasis in email).

4         88.    The  detective  explained  that  Tempe  interprets  this  statute  to  mean  any

5   expression will automatically trigger application of the law whenever someone complains

6   about it, stating specifically: "If the police receive a call by another citizen that someone is

7   disturbing them by their conduct, (noise in this case by the use of a megaphone or other

8   assisted means) and that the unreasonable noise is disturbing their peace, it is considered

9   disorderly conduct (DC)."

10        89.    Detective Ryberg also explained that police are obliged to respond and issue

11  a warning whenever a complainant claims her peace is disturbed, no questions asked.  This

12  warning,  Detective  Ryberg  asserted,  provides  the  speaker  with  knowledge  that  she  is

13  disturbing someone else's peace, such that continuing use of amplified voice subjects her

14  to arrest under ARS § 13-2904(A)2.

15        90.    The  detective  noted  the  subjective  nature  of  the  standard,  commenting  that

16  "everyone has a different opinion of what is loud, unreasonable, etc.  That is ultimately for

17  the courts to decide."  But Detective Ryberg discounted consideration of objective volume,

18  commenting  that  "the  officer  shouldn't  get  into  a  discussion  of  that  on  the  street  about

19  decibel levels etc."

20        91.    After reading this email, Pierce was even more concerned about suppression

21  of her speech due to the hostility toward her message.  Pierce knew Planned Parenthood

22  and a few others affiliated with nearby businesses disagreed with her views on abortion

1   and were more than willing to complain to the police about it, especially knowing they

2   could censor her life-affirming message as a result.

3       92.   Because Pierce has been issued an official warning, she is at risk of criminal

4   sanction due to subjective complaint.  She concluded that she could no longer safely use

5   form of amplification, whether amplifier or cheer cone – at any volume – on the public

6   sidewalks bordering Baseline Road, effectively silencing her views in that area.

7       93.   Seeking to resolve this conflict, on May 8, 2018, Pierce sent a letter, through

8   legal counsel, to Tempe Mayor Mark Mitchell, Chief Moir, and City Attorney Judith

9   Baumann, seeking relief from the ban on her amplified speech on the sidewalks near

10   Planned Parenthood.

11       94.   The letter explained Pierce's expressive activity, her interaction with Officer

12   Claridge on December 13, 2017, and correspondence with Detective Ryberg, indicating

13   that she would be arrested if a subjective complaint about her speech is received.  The letter

14   highlighted legal authorities demonstrating the unconstitutionality of banning amplified

15   speech of reasonable volume based on subjective complaints.

16       95.   Pierce did not seek money or damages in her letter.  She merely asked for

17   assurance that Tempe no longer apply ARS § 13-2904(A)2 to prohibit her, under threat of

18   criminal penalty, from engaging in amplified speech at a reasonable volume based on

19   subjective complaints.

20       96.   On May 25, 2018, City Attorney Judi Baumann responded to Pierce's letter.

21   Copying both the Mayor and Chief of Police, the letter was Tempe's response to Pierce's

22   plea, but it did not offer any relief for Pierce.  Instead, the letter defended Tempe's

application of ARS § 13-2904(A)2, specifically endorsing City policy of invoking this state law instead Tempe Ordinance § 20-6 for curbing amplification on Baseline Road as set out in Detective Ryberg's January 12 email.  The letter assures that Tempe would continue to enforce the statute against Pierce in the same manner, subjecting Pierce to criminal arrest.

97.     As a direct consequence of Tempe's continued policy in applying ARS § 13-2904(A)2, Pierce is effectively and perpetually banned from using amplification on the public sidewalk near Planned Parenthood, due to the ever-constant threat that someone might lodge a subjective complaint about her expression, subjecting her to criminal citation or arrest even if she complies fully with the decibel limits set out in Tempe Ordinance § 20-6.

98.     In light of the ongoing threat of criminal sanction, Pierce has not resumed her message on the sidewalk near Planned Parenthood.  The ongoing threat of citation and arrest chills and deters Pierce from engaging in her constitutionally-protected expression in a traditional public forum, precluding from reaching her desired audience with her desired message.

99.     The chill and deterrence on the exercise of Pierce's constitutional rights on the public sidewalks is irreparable harm to her.

100.     Pierce lacks an adequate remedy at law for the loss of her constitutional rights.

1

2

## **FIRST CAUSE OF ACTION**

### **Violation of Freedom of Speech**

3       101.    Pierce's amplified speech at reasonable volume in a traditional public forum

4   is protected speech under the First Amendment to the United States Constitution.

5       102.    Defendants' application and enforcement of ARS § 13-2904(A)2:

6              a.    are vague and overbroad;

7              b.    discriminate against speech because of its content;

8              c.    discriminate against speech on the basis of the speaker's viewpoint;

9              d.    restrain constitutionally-protected speech in advance of its expression

10                  without appropriate guidelines or standards to guide the discretion of

11                  officials charged with enforcing the policy;

12             e.    chill the free speech of Pierce and of other third-party citizens;

13             f.    create a content-based heckler's veto that allows Pierce to be silenced

14                  due to hostile audiences;

15             g.    lack narrow tailoring, fail to achieve any legitimate government

16                  purpose, and fail to leave open alternative avenues for expression; and

17             h.    amount to an unreasonable ban on protected form of expression in

18                  traditional public fora.

19      103.    Defendants have no compelling or legitimate reason that can justify the

20  application of ARS § 13-2904(A)2 to ban Pierce's use of amplification at reasonable and

21  lawful volume on public sidewalks based on subjective complaints.

22

1    104.   Defendants' policies and practices, including but not limited to its application

2    and enforcement of ARS § 13-2904(A)2 to ban amplification on public sidewalks,

3    regardless of noise level, violate the Free Speech Clause of the First Amendment to the

4    United States Constitution, made applicable to the States through the Fourteenth

5    Amendment.

6    WHEREFORE, Pierce respectfully prays the Court grant the equitable and legal

7    relief set forth in the prayer for relief.

8    **SECOND CAUSE OF ACTION**

9    **Violation of the Due Process Clause**

10    105.   Defendants' policies and practices, including but not limited to its application

11    and enforcement of ARS § 13-2904(A)2 to ban amplification on public sidewalks based

12    on subjective complaints, are vague and lack sufficient objective standards to curtail the

13    discretion of officials and police officers.  This vagueness affords Defendants opportunity

14    to enforce its policies in an *ad hoc*, arbitrary, and discriminatory manner against Pierce and

15    others.

16    106.   Defendants have no compelling or legitimate reason that can justify their

17    vague and ambiguous policies and practices.

18    107.   Defendants' policies and practices, including but not limited to its application

19    and enforcement of ARS § 13-2904(A)2 to ban amplification on public sidewalks,

20    regardless of noise level, violate the Due Process Clause of the Fourteenth Amendment to

21    the United States Constitution.

22

21

WHEREFORE, Pierce respectfully prays the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Pierce respectfully prays for relief in that this Court:

A.    Assume jurisdiction over this action;

B.    Enter a judgment and decree declaring that the actions taken by Defendants in prohibiting Pierce under threat of arrest from sharing her religious message via reasonably amplified conversation in traditional public fora on December 13, 2017, violated Pierce's constitutional rights, specifically, her rights to free speech and due process;

C.    Enter a judgment and decree declaring that the Defendants' policy and practice of enforcing ARS § 13-2904(A)2 to ban amplification on public sidewalks based on subjective complaints, and without regard to whether the volume is objectively reasonable, is unconstitutional as applied to Pierce's expression, because it violates her rights as well as the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D.    Enter a preliminary and permanent injunction enjoining Defendants, their agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying ARS § 13-2904(A)2 so as to bar amplified speech of speakers, including Pierce, on public sidewalks and ways within the City of Tempe due to subjective complaints about the speech;

E.    Adjudge, decree, and declare the rights and other legal relations with the

22

1  subject matter here in controversy, in order that such declaration shall have the force and

2  effect of final judgment;

3       F.     Award Pierce nominal damages in the amount of $1.00 arising from the acts

4  of the Defendants as an important vindication of her constitutional rights;

5       G.     Award Pierce her costs and expenses of this action, including reasonable

6  attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

7       H.     Grant such other and further relief as appears to this Court to be equitable

8  and just.

9       Respectfully submitted this 7th day of November 2018.

10    By:

| s/Nathan W. Kellum* | s/Bert E. Moll |
|---|---|
| TN BAR #13482; MS BAR # 8813 | Bert E. Moll, SBN 15200 |
| nkellum@crelaw.org | bert@mollazlaw.com |
| Mark A. Mangini*, TN BAR #33422 | Robert Lundberg |
| mmangini@crelaw.org | robert.lundberg@mollazlaw.com |
| Center for Religious Expression | Bert E. Moll, P.C. |
| 699 Oakleaf Office Lane, Suite 107 | PO Box 999 |
| Memphis, TN  38117 | Chandler, AZ  85244 |
| (901) 684-5485 – telephone | (480) 302-5155 – telephone |
| (901) 684-5499 – facsimile | (480) 857-7490 – facsimile |
| Attorneys for Plaintiff Sherry Pierce | *Local Counsel* |
| *Motion for admission *pro hac vice* forthcoming | Attorneys for Plaintiff Sherry Pierce |

1

**VERIFICATION**

2      I, the undersigned, a citizen of the United States and resident of the State of

3  Arizona, have read the foregoing Verified Complaint and declare under penalty of

4  perjury, under the laws of the State of Arizona, that the foregoing is true and correct.

5      Dated this 29ᵗʰ day of _October_, 2018.

6

7

8                                      SHERRY PIERCE

9

10

11

12

13

14

15

16

17

18

19

20

21

22